UNITED STATES of America, Appellee,

v.

Dwight G. TOWNSEND, Defendant–
Appellant.

No. 747, Docket 92–1399.

United States Court of Appeals,
Second Circuit.

Argued Jan. 5, 1993.

Decided March 8, 1993.

R. Peter Decato, Lebanon, NH (Nighswander, Martin & Mitchell, of counsel), for defendant-appellant.

David V. Kirby, Chief, Crim. Div., D.Vt. (Charles A. Caruso, U.S. Atty., Peter W. Hull, Asst. U.S. Atty., D.Vt., of counsel), for appellee.

Before: KEARSE, WINTER, and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant Dwight G. Townsend appeals from a judgment entered after a jury trial in the United States District Court for the District of Vermont (Franklin S. Billings, Jr., *Judge.*), convicting him of intentionally intercepting the telephone conversations of third parties without their knowledge or consent in violation of 18 U.S.C. § 2511(1)(a) (1988). Townsend was sentenced to a prison term of twelve months to be followed by two years of supervised release.

On appeal, Townsend contends that his conviction should be reversed because the district court erroneously instructed the jury as to the *mens rea* element of the crime charged. Specifically, Townsend contends that the district court instructed the jury that it could find Townsend guilty if he "knowingly" intercepted the telephone conversations, whereas the statute under which Townsend was prosecuted re-

quired the government to prove that he had acted "intentionally." 18 U.S.C. § 2511(1)(a) (1988). Townsend further argues that the district court committed reversible error by excluding evidence which Townsend claims supported his professed motive in taping phone calls made to his office and residence.

For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

In September 1990, Special Agent Charles McGinnis, Jr. of the FBI began an investigation of Townsend's conduct as Sheriff of Orange County in Vermont. The investigation was prompted by a complaint lodged by a former deputy sheriff alleging that Townsend routinely used automatic recording equipment to capture the telephone conversations of his employees.

In an initial interview with Special Agent McGinnis, Townsend denied that he had ever recorded conversations of third parties, and specifically denied recording a telephone conversation between Roseann Sayers and Reevie Rockhill, a present and a past employee respectively. Townsend did, however, admit that he had purchased recording equipment capable of automatically recording calls.

Almost immediately after this initial interview, Townsend's attorney called Special Agent McGinnis in order to schedule another interview for Townsend to explain his answers, conceding that Townsend had not been "completely candid" in the first interview. In the second interview, Townsend admitted that he had "accidentally" taped the specific conversation about which Special Agent McGinnis had previously questioned him. However, Townsend continued to maintain that the equipment was routinely used to record only his own conversations. Townsend explained that he had been getting harassing phone calls at the sheriff's complex, which included his office and official residence, and was trying to capture these conversations on tape.

Townsend was subsequently indicted in May 1991, and his one count indictment charged him with violating 18 U.S.C. § 2511(1)(a) by surreptitiously recording the telephone conversations of third parties without their knowledge or consent. In February 1992, Townsend was tried by a jury before the United States District Court for the District of Vermont (Billings, J.). At trial, the government introduced Special Agent McGinnis's testimony concerning Townsend's initial denial and subsequent admissions. The government also presented the testimony of Townsend's former wife, who recounted that Townsend had purchased the automatic recording equipment and she observed that it was turned on most of the time. Moreover, Townsend's ex-wife testified that Townsend had played for her the specific conversation about which Special Agent McGinnis had questioned Townsend. The topic of this recorded conversation was the antipathy that both Roseann Sayers and Reevie Rockhill felt for Townsend. According to Townsend's ex-wife, one of the reasons Townsend gave for recording this conversation was to "find out who might be in the office that was betraying him [sic]." This recording was also played for one of Townsend's deputies who testified that Townsend explained that this was his way of keeping track of his employees' loyalties. Another of Townsend's former deputies testified that Townsend had played for him a recording of a conversation between the deputy and the deputy's wife. The deputy testified that after playing the recording Townsend told him: "this shows you what I can do."

Townsend testified in his own defense, stating that he had purchased the equipment in order to capture harassing telephone calls he had received. Townsend admitted to recording only one conversation not involving himself—the conversation between Roseann Sayers and Reevie Rockhill about which both his ex-wife and former deputy had previously testified—but, according to Townsend, his recording of this conversation was accidental.

Townsend also sought to introduce testimony about the "bad blood" between himself and the previous sheriff, specifically concerning the condition in which Town-

send found the sheriff's complex upon assuming the office. Townsend claims to have found dead rats, weapons missing, and a picture of a pig with the notation "Kill the Pig, Townsend." Townsend attempted to introduce this testimony to support the proposition that he had additional reasons to be concerned about getting harassing phone calls. Through this testimony Townsend hoped to establish that he had a proper motive for employing the recording equipment. The district court excluded this testimony, pursuant to Fed. R.Evid. 403, on the ground that it was tangential to Townsend's motivation for putting in the recording equipment. The district court ruled that Townsend could testify to the harassing phone calls, but not to the unrelated problems with the former sheriff, since there was no evidence of any connection between the two.

Following a two-day trial, the jury convicted Townsend of the one count contained in the indictment. Thereafter, the district court denied Townsend's motion for a new trial, and sentenced Townsend to twelve months imprisonment.

Townsend now appeals.

## DISCUSSION

### I. *The Jury Instruction*

On appeal, Townsend first contends that the district court erred by failing to provide the jury with the proper definition of "intentionally"—the *mens rea* element of 18 U.S.C. § 2511(1)(a). Specifically, Townsend argues that the district court improperly employed a model jury charge adapted from the definition of "knowingly," whereas the statute under which he was prosecuted required the government to prove that he had acted "intentionally." 18 U.S.C. § 2511(1)(a).

In order to convict Townsend, the jury had to find that he "intentionally" intercepted the conversations of third parties without their knowledge or consent. 18 U.S.C. § 2511(1)(a). However, there are apparently no model jury instructions that define the word "intentionally" in this context. *See, e.g.,* 1 Leonard B. Sand et al.,

*Modern Federal Jury Instructions (Criminal)* § 3A.01; Comm. on Model Criminal Jury Instructions Within the Eighth Cir., *Manual Of Model Criminal Jury Instructions for the Dist. Courts Of The Eighth Cir.* § 7 (1992); U.S. Sixth Cir. Dist. Judges Ass'n., *Pattern Criminal Jury Instructions* §§ 2.05–2.09 (1991); United States Fifth Cir. Dist. Judges Ass'n., *Pattern Jury Instructions: Criminal Cases* §§ 1.35–1.36 (1990). The court, therefore, solicited a proposed charge.

Townsend's counsel proposed that the following charge be given:

In the case before you, the government must prove beyond a reasonable doubt that the defendant's acts were intentional. As used in the Electronic Communications Privacy Act, the term intentional is narrower than the dictionary definition of intentional. Intentional means more than that one voluntarily engaged in conduct or caused the result. Such conduct or the causing of the result must have been the person's conscious object. An intentional state of mind means that one's state of mind is intentional as to one's conduct or the result of one's conduct if such conduct or result is one's conscious objective. The intentional state of mind is applicable only to conduct and results. Since one has no control over the existence of circumstances, one cannot intend them. A common means to describe conduct as intentional or to say that one causes the result intentionally, is to state that it was done or accomplished on purpose. The term intention is not meant to connote the existence of a motive. Liability for intentionally engaging in prohibited conduct is not dependent on an assessment of the merit of the motive that led the person to disregard the law.

The district court rejected this definition and instead provided the following definition, which was derived from a model jury instruction definition of "knowingly":

The third element which must be proved by the government beyond a reasonable doubt is that the defendant acted intentionally when he intercepted the wire

communication. Thus, before you can find that the defendant acted knowingly, you must be satisfied beyond a reasonable doubt that [the defendant] acted deliberately, intentionally, and understandingly; that is, that he knew what he was doing when he intercepted the wire communication.

[A. 63]. *See* Leonard B. Sand, et al., 1 *Modern Federal Jury Instructions (Criminal)* § 3A.01, at 3A–1.

According to Townsend, this charge misdefined the element of "intent" by utilizing a less restrictive requirement. Specifically, Townsend argues that by employing a "knowingly" standard the charge failed to provide for a defense of inadvertence. We disagree with this contention.

Initially we take heed of the warning issued in *United States v. Bailey*, 444 U.S. 394, 403, 100 S.Ct. 624, 631, 62 L.Ed.2d 575 (1980), that "[f]ew areas of criminal law pose more difficulty than the proper definition of the *mens rea* required for any particular crime." While admittedly the charge given by the district court could have been more artfully drawn, the charge did make clear to the jury that it had to find that Townsend acted "deliberately, intentionally, and understandingly." Consequently, Townsend cannot justifiably complain that the jury might misinterpret such a charge and convict him on the basis of finding that he negligently or inadvertently intercepted the telephone conversations of third parties without their knowledge or consent. One cannot deliberately act inadvertently. By convicting Townsend on the district court's charge, the jury necessarily discredited his testimony that the taping was inadvertent.

■ The district court's charge required that the jury find that the defendant acted "knowingly", "deliberately", "intentionally" and "understandingly." Townsend cannot be heard to complain about the use of the term "deliberately" or "intentionally" which are synonyms of the term "purposefully." While it is true that the terms "knowingly" and "understandingly" were mingled in the charge, the court instructed the jury to find that Townsend "acted deliberately, intentionally, and understandingly, that is, that he knew what he was doing when he intercepted the wire communication." Although the charge also used the term "knowingly," viewed as a whole, there can be no doubt that the definition provided excluded any interception that might have been inadvertent. Therefore, we conclude that the charge in question properly instructed the jury as to the degree of culpability that the government needed to prove in order to meet its burden under the statute.

■ Finally, in order to forestall such problems in the future, we suggest that the following definition of "intentionally" be used when appropriate:

The government must prove beyond a reasonable doubt that the defendant acted intentionally when [he or she committed the act charged]. Before you can find that the defendant acted intentionally, you must be satisfied beyond a reasonable doubt that the defendant acted deliberately and purposefully; that is, defendant's act must have been the product of defendant's conscious objective rather than the product of a mistake or an accident.

## II. *The Evidentiary Ruling*

Townsend also asserts that the district court erred in excluding Townsend's proffered testimony of his troubles with the previous sheriff. This testimony concerned the fact that dead rats had been left in the office, weapons had been taken from the office, and a picture of a pig had been left in the sheriff's residence with the notation "Kill the Pig, Townsend." According to Townsend, the district court abused its discretion and committed reversible error in excluding this testimony on the ground that it was tangential. This argument is without merit.

■ Pursuant to Federal Rule of Evidence 403, a trial judge can exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue

delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. This court will not reverse a decision to exclude evidence as tangential under Rule 403 unless it constitutes an abuse of discretion. *See, e.g., In re Brooklyn Navy Yard Asbestos Litigation,* 971 F.2d 831, 840 (2d Cir.1992). Here no such abuse occurred.

Townsend contends that the excluded testimony was necessary to establish a proper motive for the automatic taping, *i.e.,* to capture the harassing phone calls made to him on tape. There was, however, no established connection between these phone calls and the excluded evidence. Since Townsend was able to testify about the harassing phone calls, it was not error for the court to exclude the far less relevant testimony concerning Townsend's conflict with the former sheriff.

Moreover, 18 U.S.C. § 2511(a)(1) only requires intentional interception of communications, not willful interception. The question of whether the defendant had a good or evil purpose in utilizing the automatic recording equipment is, therefore, irrelevant. *See* S.Rep. No. 541 99th Cong., 2d Sess. 23 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3578. All that is relevant is that Townsend intentionally intercepted communications between two unknowing and unconsenting individuals.

Finally, even if evidence of motivation had in some way been relevant, Townsend cannot complain that he was not provided with an opportunity to present such evidence. Townsend testified at length as to the harassing phone calls, which were the only reliable evidence of motive. The other evidence was only probative of Townsend's dispute with the former sheriff, not the harassing phone calls, and was properly excluded.

## CONCLUSION

Based on the foregoing, the judgment of the district court is affirmed.