**James THOMPSON, Plaintiff,**

v.

**Denise DULANEY; Elsie Dulaney; Phil Dulaney; Dale Brounstein; Russ Sardo; Robert Moody; and Jerry Kobelin, Defendants.**

No. 90–CV–676–B.

United States District Court, D. Utah, C.D.

Dec. 1, 1993.

James Thompson, pro se.

Roger P. Christensen, Lynn S. Davies, Salt Lake City, UT, Thomas S. Taylor, Provo, UT, for defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

BRIMMER, District Judge.*

The above-entitled matter having come before the Court upon Defendants' Motions for Summary Judgment, and the Court having reviewed the materials on file herein, having heard argument from the parties, and being fully advised in the premises, FINDS and ORDERS as follows:

### Factual Background

In 1989, defendant Denise Dulaney and her husband James Thompson obtained a divorce in Utah state court. During subsequent custody proceedings, Denise Dulaney attempted to introduce transcripts of several phone conversations she had recorded with a wiretap between Thompson and the couple's then three and five year old children, who lived with Dulaney. In 1988, when these conversations were recorded, divorce proceedings between Dulaney and Thompson had commenced and Dulaney and the children were living with Dulaney's parents, Phil and Elsie Dulaney, in Oregon.

Prior to trial, Thompson filed a motion in limine to exclude the transcripts of the wiretapped conversations from the custody proceeding. The motion was not granted,[1] and the transcripts were introduced. At the custody hearing, the court determined that both Thompson and Dulaney were fit to be named guardian of the children, but nonetheless awarded Denise Dulaney custody.

In 1990, Thompson initiated the present suit against the seven above-named defendants,[2] alleging violations of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (1968 &

---

* United States District Judge for the District of Wyoming, sitting by designation.

1. It is unclear from the record whether the state court actually denied Thompson's motion or whether it was simply never ruled on one way or the other. The critical fact, which is that the contents of the transcripts were introduced at the hearing, is undisputed.

2. The defendants in this matter are Denise Dulaney, Thompson's ex-wife; Elsie and Phil Dulaney, Denise's parents; Drs. Dale Brounstein and Russ Sardo, Denise's expert witnesses at the custody hearing; and Robert Moody and Jerry Kobelin, Denise's attorneys.

West Supp.1993) ("Title III"),[3] conspiracies to violate Title III, and numerous state law claims, both statutory and common law. He sought several million dollars in compensatory and punitive damages.

### Procedural Background

After discovery commenced, the parties filed cross-motions for summary judgment, and this Court heard oral argument on those motions on May 3, 1991. In an order dated May 29, 1991, this Court, relying on *Anonymous v. Anonymous*, 558 F.2d 677 (2d Cir. 1977), concluded that this case was outside the purview of Title III since it was a "purely domestic conflict," *id.* at 679, and judgment was entered for all the defendants on Thompson's claims. Given the Court's disposition on the sole federal cause of action, there was no longer a basis for the exercise of subject matter jurisdiction over the pendent state law claims, and they were dismissed accordingly.

Thompson appealed the Court's ruling on summary judgment to the Tenth Circuit, which, on July 23, 1992, issued an order affirming in part and reversing in part this Court's order granting summary judgment. *See Thompson v. Dulaney*, 970 F.2d 744 (10th Cir.1992). The appeals court remanded the case to this Court for further proceedings.

This Court has subject matter jurisdiction over the federal cause of action pursuant to 28 U.S.C. § 1331 (1988) and 18 U.S.C. §§ 2510–2520 (1968 & West Supp.1993), over the state-law claims by way of supplemental jurisdiction under 28 U.S.C. § 1367(a) (West Supp.1993), venue is proper in this Court under 28 U.S.C. § 1391 (West Supp.1993), and no objections have been raised to this Court's assertion of personal jurisdiction over the defendants.

### Standard of Review

A. *The Requirements of Rule 56(c)*

Pursuant to Rule 56(c), a trial court hearing a motion for summary judgment is sim-

ply required to determine if there are any "genuine issues of material fact," and whether the moving party is entitled to "judgment as a matter of law." FED.R.CIV.P. 56(c). In deciding a summary judgment motion, the Court must therefore make two separate inquiries. First, are the facts in dispute "material" facts, and if so, does the dispute over these material fact create any "genuine" issues for trial.

In determining materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Carey v. United States Postal Service*, 812 F.2d 621, 623 (10th Cir.1987). Factual disputes over collateral matters will therefore not preclude the entry of summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (citation omitted).

■ If the Court concludes that the fact in dispute is a "material" fact, then the Court must determine whether the issue is a "genuine" issue of fact that must be resolved by a jury. This requires a court to assess whether the evidence presented is such "that a reasonable jury could return a verdict for the nonmoving party." *Id.* This inquiry focuses on the sufficiency of the evidence as well as its weight. In the absence of "any significant probative evidence tending to support the complaint," *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968), summary judgment is warranted. The Supreme Court has noted that assessing whether an issue is genuine under Rule 56(c) is similar to standard used for deciding a motion for a judgment as a matter of law, formerly known as a directed verdict, under Rule 50(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citation omitted). The primary difference between a Rule 56(c) motion and a Rule 50(a) motion is procedural; the former is based on documentary evidence while the latter is

---

**3.** 18 U.S.C. § 2520(a) (1968), which is part of the Omnibus Crime Control and Safe Streets Act of 1968, explicitly creates a civil cause of action for "any person" whose electronic communications are "intercepted, disclosed, or intentionally used in violation of [the other sections of Title III]."

based on evidence admitted at trial. *Bill Johnson's Restaurant, Inc. v. NLRB*, 461 U.S. 731, 745, 103 S.Ct. 2161, 2171, 76 L.Ed.2d 277 (1983). Thus, it is apparent that the ultimate determination is whether reasonable minds could differ as to the import of the evidence; if they cannot, then there is no "genuine" issue of fact and summary judgment is proper.

This approach to ruling on a motion for a directed verdict, adopted in the summary judgment context, represents a repudiation of what had been known as the "scintilla of evidence" standard. Under that standard, the production of any evidence, without regard to its probative value, which created an issue of fact, required a trial judge to deny a motion for a directed verdict and let the jury decide. *See Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511 (adopting several old Supreme Court precedents on the standard for a directed verdict in the summary judgment context) (citations omitted).

■ The trial court's role is limited to determining the existence *vel non* of a genuine issue of material fact, and nothing more. The Court does not assess the credibility or the probative weight of the evidence that established the existence of the genuine issue of material fact. The determination that a true factual dispute exists means, *ipso facto*, that summary judgment may not be entered "as a matter of law," and the case must therefore be submitted to a jury.

### B. *The Burdens of Proof*

■ The initial burden of production under Rule 56(c) is on the moving party. That party must make a sufficient "showing" to the trial court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 322–24, 106 S.Ct. at 2552–53. The movant satisfies its burden by producing evidence that is admissible as to content, not form, identifying those portions of the record, including the pleadings and any material obtained during discovery, that demonstrate the absence of any genuine issues of material fact. *Id.* at 323–24, 106 S.Ct. at 2552–53.

If the movant meets its burden of production, then the burden of production shifts to the nonmoving party. That party "may *not* rest upon the mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (emphasis added). The nonmoving party is now put to their proof; they must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986) (citations omitted). They must make a "sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 25; *Carey*, 812 F.2d at 623. They must demonstrate to the Court's satisfaction that the "evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 623. In making this determination, the trial court must "examine the factual record and [draw all] reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Dorrance v. McCarthy*, 957 F.2d 761, 762 (10th Cir.1992) (quoting *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir.1990)).

The Court will now apply these legal standards to the facts of the case before it.

### *Discussion*

A. *The Tenth Circuit's Order on Remand*

1. *Rulings on Summary Judgment*

In its order on remand, the Tenth Circuit affirmed in part and reversed in part the grant of summary judgment. The appellate court specifically took the time to discuss and interpret Title III and to delineate what was necessary to establish a *prima facie* cause of action under that statute in an effort to provide this Court, and other courts, with guidance under this little-used statute. *See Thompson*, 970 F.2d at 749–50.

The opinion of the Court of Appeals can be broken down into three separate rulings: one on the conspiracy claims, one on the unlawful wiretapping claims, and one on the use or disclosure claims.

The grant of summary judgment on Thompson's claims that Phil and Elsie Dulaney conspired to violate Title III, and that Denise Dulaney's expert witnesses and her attorneys also conspired to violate Title III, was affirmed on appeal. *See id.* at 749. The appellate court did, however, state that there were factual issues as to whether Denise Dulaney and Russ Sardo engaged in a conspiracy to violate Title III and remanded for a determination of that issue. *Id.* at 749–50.

The Court of Appeals reversed and remanded Thompson's unlawful wiretapping claims against Phil, Elsie and Denise Dulaney. *Id.*

Finally, the appellate court reversed and remanded Thompson's use or disclosure claims against all seven defendants. *Id.*

### 2. The Tenth Circuit's Interpretation of Title III

As noted above, the Court of Appeals took the time to render an interpretation of Title III in an effort to provide this Court with controlling legal standards to apply in this case. Title III of the Omnibus Crime Control and Safe Streets Act of 1968, codified at 18 U.S.C. § 2511(1)(a)–(d), provides in relevant part:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept, any wire, oral, or electronic communication;

(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication....;

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

. . . . .

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).[4]

In this Court's May 1991 order granting the defendants' motions for summary judgment, this Court was faced with an issue of first impression in the Tenth Circuit regarding the applicability of Title III to cases of interspousal wiretapping.[5] Although three other circuits had ruled that Title III did apply to interspousal wiretapping, *see Kempf v. Kempf,* 868 F.2d 970, 973 (8th Cir.1989); *Pritchard v. Pritchard,* 732 F.2d 372, 274 (4th Cir.1984); *United States v. Jones,* 542 F.2d 661, 673 (6th Cir.1976), two circuits had ruled that interspousal wiretapping was beyond the reach of Title III. *See Anonymous v. Anonymous,* 558 F.2d 677, 679 (2d Cir. 1977); *Simpson v. Simpson,* 490 F.2d 803, 810 (5th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974) (adopting the reasoning of *Anonymous* ). This Court adopted the "minority" view of the Second and Fifth Circuits that Title III was inapplicable to interspousal wiretapping, which provided the basis for granting summary judgment to the defendants.

---

4. The initial version of Title III required the plaintiff to prove only "willfulness" on the part of the defendant. The 1986 amendments to this statute modified the mental state required to establish a violation to proof of actual intent. "We proceed under the statute as in effect at the time of the alleged violation." *Newcomb v. Ingle,* 944 F.2d 1534, 1535 n. 2 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 903, 116 L.Ed.2d 804 (1992). Thus, since the conduct in question occurred in 1988, the proper *mens rea* is actual intent.

5. It should be pointed out that the term "interspousal wiretapping" is misleading. The term is used as a shorthand description for electronic surveillance by one spouse against the other spouse. As one court noted, the phrase is incorrect because "[Denise Dulaney], of course, was not talking to herself on the telephone." *Kratz v. Kratz,* 477 F.Supp. 463, 468 n. 10 (E.D.Pa.1979).

While Thompson's appeal was pending in this matter, the Tenth Circuit issued two opinions within a period of five weeks that essentially dictated the result in Thompson's appeal.

*Newcomb* was decided in late August, 1991. That case involved a minor child who sued his custodial parents under Title III for intercepting his telephone conversations. While the Tenth Circuit noted that there was a split in the circuits over the question of whether Title III extended to so-called interspousal wiretapping, *see id.* at 1535 n. 3, the court avoided that question, concluding that interspousal wiretapping was "qualitatively different from a custodial parent tapping a minor child's conversation within the family home." *Id.* at 1535–36.

Five weeks later, the Tenth Circuit was squarely confronted with the issue left open in *Newcomb*. In *Heggy v. Heggy*, 944 F.2d 1537 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 1514, 117 L.Ed.2d 651 (1992), which was decided in early October, 1991, the Tenth Circuit adopted the "majority" view taken by the Fourth, Sixth and Eighth Circuits, concluding that Title III did provide a remedy for interspousal wiretapping within the marital home. *Id.* at 1539. In its opinion in *Heggy*, the Tenth Circuit specifically rejected and criticized the conclusion reached in *Simpson* and *Anonymous*, which were the cases that this Court relied on in granting the defendants' motions for summary judgment.

*Heggy*, which was decided after this Court's May 1991 ruling, justified reversal of this Court's order granting summary judgment for the defendants. In *Thompson v. Dulaney*, 970 F.2d 744 (10th Cir.1992), the Court of Appeals relied on *Heggy* in reversing in part this Court's order granting summary judgment. The Court explained that in *Heggy*, it elected to follow the majority view because the words "any person" in the statute were a "clear and unambiguous" dictate that compelled the result that "[t]here exists no interspousal exception to Title III liability." *Thompson*, 970 F.2d at 748.

While the language of the statute compelled this result, the court also pointed out that the statute established certain limits on the actionability of interspousal wiretapping in a particular case. First, the statute requires proof of actual intent on the part of the intercepting spouse, thereby excluding what the court called "inadvertent interceptions." *Id.* Second, the court noted that 18 U.S.C. § 2511(2) enumerated specific exceptions that would often relieve the actor of liability, the most notable of which was the "consent" exception, *see* 18 U.S.C. § 2511(2)(d). Finally, the court pointed out that liability under Title III premised on the wrongful use or disclosure of information obtained from a wiretap requires an even "greater degree of knowledge on the part of the defendant." *Thompson*, 970 F.2d at 749. In addition to proving that the use or disclosure was done intentionally, a defendant "must be shown to have been aware of the factual circumstances that would violate the statute." *Id.*

Thus, to establish use or disclosure liability, it is insufficient to prove only that the defendant knew that the information was the product of a wiretap. The reason for this is that not all wiretaps are illegal *per se.* As discussed above, § 2511(2) specifically lists exceptions to the general prohibition against wiretaps. It is apparent that the intent of Congress was only to deter the use or disclosure of information *illegally obtained* in violation of Title III, and not all wiretap evidence. It would not further the purposes underlying the prohibition against the use or disclosure of such information to punish people who use or disclose information known to have been obtained from a wiretap if, in fact, that wiretap was consented to or otherwise lawfully obtained.

■ Therefore, in order for a plaintiff to prevail on a use or disclosure claim, the plaintiff must prove: (1) that the defendant "knew or should have known" that the information was the product of an illegal wiretap, and (2) that the defendant had knowledge of the facts and circumstances surrounding the interception so that he "knew or should have known" that the interception was prohibited under Title III. *See id.*

This will often require the plaintiff to prove that the defendant had notice that

neither party consented to the wiretap, since consent would negate the requirement that the party had knowledge that the wiretap was an illegal one. Mere knowledge that the information allegedly used or disclosed came from a wiretap is insufficient unless additional circumstantial proof is introduced that would enable an inference to be drawn that the defendant knew or should have known that the wiretap was an illegal one under Title III.

With these principles in mind, the Court will now turn to the merits of the contentions.

### B. Application to this Case

#### 1. The Unlawful Wiretapping Claims

##### a. Denise Dulaney

After expounding on what is required to state a claim under the various aspects of Title III, the appellate court concluded that this case should be remanded for a determination of whether any factual issues existed regarding the conduct of Denise, Phil and Elsie Dulaney with respect to Title III. As discussed above, establishing a violation of 18 U.S.C. § 2511(1)(a) for intercepting an electronic communication requires proof of actual intent on the part of the intercepting spouse, Denise Dulaney.

##### i. Intent

■ Denise Dulaney's argument is that she did not act with the requisite state of mind in this case. In support of her contention, she first argues that she recorded these conversations because she was concerned that Thompson may have been trying to undermine the childrens' relationship with her. In essence, she argues that she taped the conversations because she was acting in the best interests of her children. She also argues that she did so in reliance on the advice of her attorneys that her actions were legal, and after consulting with Thompson.

Thompson alleges that Denise Dulaney admitted that the recordings were "innocuous," but that she still continued to tape the conversations. As a result, he contends that she intended to tape the recordings. This Court agrees.

The critical issue on this point is the definition of intent. Denise Dulaney argues that her acts were not performed with a bad purpose, or with a specific disregard of the law, and that they were not without justifiable excuse. This Court is not persuaded.

In *United States v. Townsend*, 987 F.2d 927 (2d Cir.1993), the Second Circuit set forth a suggested jury instruction on the intent element of Title III. The Court stated that the defendant must be shown to have acted "deliberately and purposefully; that is, defendant's act must have been the product of defendant's conscious objective *rather than the product of a mistake or an accident.*" *Id.* at 930 (emphasis added).

The Court is aware that *Townsend* was a criminal prosecution. Nonetheless, this Court is convinced that this definition of intent is consistent with the view taken by the Tenth Circuit in *Thompson*. In *Thompson*, the court stated that the wording of the statute "requires that interceptions be intentional before liability attaches, thereby excluding liability for *inadvertent* interceptions." *Thompson*, 970 F.2d at 748 (emphasis added). Thus, the focus of the Tenth Circuit, like the Second Circuit, is on the issue of the deliberateness of the act, or, stated another way, whether the actor intended to intercept the communication or whether it happened inadvertently. Thus, Dulaney's *motive*, whether she acted with a bad purpose or in disregard of the law, is not the issue. *See* S.REP. No. 99–541, 99th Cong., 2d Sess. 23 (Oct. 17, 1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3577–79 ("The term 'intentional' is not meant to connote the existence of a motive."). As a result, this Court concludes that the proper focus is on the volitional nature of the *act* of intercepting the communication. Since Denise Dulaney does not contest the fact that she did voluntarily tape record these conversations, the Court concludes that she had the requisite intent as a matter of law.

■ Denise Dulaney's second argument is that she relied, in good faith, on the advice of her attorneys in taping the conversations. This contention has been flatly rejected by the Tenth Circuit. In *Heggy*, the Tenth Circuit specifically rejected the defense of

"good faith reliance on a mistake of law" for two reasons. First, § 2520(d) expressly provides for a good faith defense in a limited number of circumstances, such as reliance on a warrant or subpoena; good faith reliance on mistake of law is not listed, and thereby deemed not to be a defense. Second, the Court stated that "[t]he law's reluctance to allow testimony concerning subjective belief after the fact reflects an obvious concern with the reliability of such testimony." *Heggy*, 944 F.2d at 1542. Thus, this evidence cannot be considered probative in determining whether to grant summary judgment.

### ii. *The Defense of Consent*

Even though Thompson may have stated a claim against Denise Dulaney under Title III with respect to intentional wiretapping, the statute expressly provides several defenses to these claims. One specific defense is § 2511(2)(d), which provides a safe harbor from Title III liability

> where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

In this case, Denise Dulaney alleges that she gave vicarious consent, on behalf of her minor children, to tape the conversations.

It is clear from the case law that Congress intended the consent exception to be interpreted broadly. *See Griggs–Ryan v. Smith*, 904 F.2d 112, 116 (1st Cir.1990) (citing *United States v. Amen*, 831 F.2d 373, 378 (2d Cir.1987)). Some courts interpreting the consent exception have drawn a distinction between whether a party had the legal capac-ity to consent and whether they actually consented.[6] *See United States v. King*, 536 F.Supp. 253 (C.D.Cal.1982).

In *King*, the party who allegedly consented to the wiretapping was an adult with legal capacity to consent. The district court concluded that, for purposes of the consent exception to Title III, the "only issue under the statute is a factual one: did the individual 'voluntarily' consent?" *Id.* at 268 (citations omitted); *see also Luna v. State of Oklahoma*, 815 P.2d 1197, 1199–1200 (Okla.Crim. App.1991) (finding that a seventeen-year old, who lacked legal capacity to consent, nonetheless "freely and voluntarily consented" to wearing a wiretap). While this Court is inclined to agree with the analysis of consent in *King* and *Luna*, which focus on actual consent, those cases would not be controlling here since this case involves minor children who lack *both* the capacity to consent and the ability to give actual consent.

The children in this case were ages three and five. They clearly lacked legal capacity to consent, and they could not, in any meaningful sense, have given actual consent, either express or implied, since they were incapable of understanding the nature of consent and of making a truly voluntary decision to consent. Thus, this case presents a unique legal question of first impression on the authority of a guardian to vicariously consent to the taping of phone conversations on behalf of minor children who are both incapable of consenting and who cannot consent in fact. Denise Dulaney asserts that in this situation, "the parent as legal guardian must have the ability to give actual consent for the child." Thompson vehemently contests this proposition.[7]

---

6. For purposes of this analysis, the phrase "actual consent" includes both express and implied consent. Implied consent is, of course, true consent, or "consent in fact," which is inferred from the surrounding circumstances. It is quite different from the legal fiction known as constructive consent. *See Smith*, 904 F.2d at 116–17.

7. In addition to contesting the consent issue on the merits, Thompson makes the conclusory assertion that Denise Dulaney's failure to raise consent as an affirmative defense in her answer constitutes waiver of that defense. *See Renfro v. City of Emporia, Kansas*, 948 F.2d 1529, 1539 (10th Cir.1991), *cert. dismissed*, —— U.S. ——, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992). This Court is not persuaded by the plaintiff's waiver argument.

The problem with this waiver argument is that it assumes the truth of the question before the Court, which is whether consent is in fact an affirmative defense under Rule 8(c). The only way that it could be an affirmative defense is if it fell within the nebulous catch-all of "any other matter constituting an avoidance or affirmative defense," FED.R.CIV.P. 8(c), since it is not one of the nineteen specifically enumerated affirmative

Denise Dulaney's argument is four-fold. First, she argues that the Utah Supreme Court has declared that the rights associated with being a parent are fundamental and basic rights and therefore, she should be afforded wide latitude in making decisions for her children. *See In re J.P.*, 648 P.2d 1364, 1372–74 (Utah 1982) (citing various state and federal constitutional provisions). Second, she bolsters this argument by noting that Utah statutory law gives parents the right to consent to legal action on behalf of a minor child in other situations, such as for marriage, medical treatment and contraception. Third, she argues that as the legal guardian of the children, Utah law allows her to make decisions on behalf of her children. Thus, the argument goes, the parental right to consent on behalf of minor children who lack legal capacity to consent and who cannot give actual consent, is a necessary parental right. In addition, she argues that the decision in *Newcomb* lends support to her argument. While this is a close and difficult question, this Court is persuaded that, on the specific facts of this case, vicarious consent is permissible under both *Newcomb* and applicable Utah law.

Utah law clearly vests the legal custodian of a minor child with certain rights to act on behalf of that minor child. While UTAH CODE ANN. § 78–3a–2(13) (1958) enumerates cer-

tain rights that the guardian has vis-a-vis the minor child, the statute does not, by its own terms, purport to be all-inclusive. In addition, § 78–3a–2(14)(b) states that a guardian is responsible for, *inter alia*, protecting the minor child. Denise Dulaney argues that if she is unable to vicariously consent for her minor children, then she is deprived of her ability to protect them. This Court believes that this case presents the paradigm example of why vicarious consent is necessary.

■ Denise Dulaney argued that she recorded the conversations with Thompson because he allegedly was interfering with her relationship with the children to whom she was awarded custody. In this case, or perhaps a more extreme example of a parent who was making abusive or obscene phone calls threatening or intimidating minor children, vicarious consent is necessary to enable the guardian to protect the children from further harassment in the future. Thus, as long as the guardian has a good faith basis that is objectively reasonable for believing that it is necessary to consent on behalf of her minor children to the taping of the phone conversations, vicarious consent will be permissible in order for the guardian to fulfill her statutory mandate to act in the best interests of the children.[8]

defenses. Thus, this Court is left with the task of determining whether consent under 18 U.S.C. § 2511(2)(d) should be considered an affirmative defense.

Rule 8(c) makes no attempt to elaborate what other matters constitute an affirmative defense. Courts have, therefore, been left to determine this issue and "some working principles" for determining what constitutes an affirmative defense under the catch-all have been formulated. *See* 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1271 (1990) (collecting authority). Relevant considerations include whether the allegation is likely to take the opposite party by surprise, whether the opposite party had notice of this defense, and whether the defense arises by logical inference from the allegations of plaintiff's complaint.

This Court concludes that Denise Dulaney's failure to plead consent under this statute does not constitute a waiver of that defense. While it would have been more prudent for Dulaney to err on the side of raising consent as an affirmative defense, it is hard to discern any possible prejudice to the defendant from this failure at

this stage of the proceedings. Indeed, he has not alleged any in his opposition to motion for summary judgment.

Finally, the Court notes that "the liberal amendment of pleadings philosophy expressed in Rule 15 can be used by the parties and the court to correct a failure to plead affirmatively when the omission is brought to light." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1271 (1990). In light of the lack of prejudice to the plaintiff, the Court concludes that the defense has not been waived.

8. The Court wishes to emphasize a point that should already be apparent. The holding in this case is very narrow and limited to the particular facts of this case. It is by no means intended to establish a sweeping precedent regarding vicarious consent under any and all circumstances. The holding of this case is clearly driven by the fact that this case involves two minor children whose relationship with their mother/guardian was allegedly being undermined by their father. Under these limited circumstances, the Court concludes that vicarious consent is permissible.

■ The consent exception, however, contains an express limitation stating that if the communication is intercepted "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State," 18 U.S.C. § 2511(2)(d) (West Supp.1993),[9] then the defense of consent is inapplicable for public policy reasons which are readily apparent. Here, Thompson alleges that the interceptions amounted to criminal and civil violations of Utah law, and as a result, the consent exception is inapplicable.

Utah recognizes the crime of "communication abuse." UTAH CODE ANN. § 76–9–403(1)(a) (1953). A person is guilty of this crime, which is a misdemeanor, if he "[i]ntercepts, without the consent of the sender or receiver, a message by telephone ..." This statute would appear to fall within the scope of the limitation on consent. The Court has concluded, however, that whether Thompson can rely on this limitation on the consent exception requires a factual resolution of what Denise Dulaney's "purpose" was in intercepting the communication. As noted above, she asserts it was to protect the children; Thompson submitted contrary evidence on this issue alleging that Denise Dulaney continued taping the conversations several months after she concluded that the conversations were in fact "innocuous." Thus, the viability of the consent defense is contingent on a resolution of her purpose in intercepting these communications.

In sum, this Court concludes that Denise Dulaney did in fact intentionally record the phone conversations between Thompson and their children. She asserts the defense of consent, and while this Court concluded that she could vicariously consent for the children as a matter of law, there are factual issues as to whether she did in fact give such consent, and if so, whether it was "prior" consent, as required by the statute. Finally, Thompson has argued that the limitation in § 2511(2)(d) removes the defense of consent from this case. The Court concluded that while Utah law does criminalize [10] Denise Dulaney's conduct, there is a fact question as to what her "purpose" was in intercepting the conversations.

### b. *The Unlawful Wiretapping Claims Against Phil and Elsie Dulaney*

■ Thompson allegations with respect to his unlawful wiretapping claim against Denise Dulaney's parents, Phil and Elsie Dulaney, are wholly conclusory. He simply alleges that they "agreed" to gather wiretapped evidence against him, and that they intercepted his conversations and procured Denise Dulaney to intercept them.

As to Thompson's first contention regarding their "agreement," the court of appeals affirmed this Court's initial grant of summary judgment with respect to Thompson's conspiracy claim. *Thompson*, 970 F.2d at 749. The appeals court noted that Phil and Elsie Dulaney's "ownership of their home and telephone and their conduct in hiring lawyers and experts for Denise Dulaney's custody suit" did not state a claim for conspiracy, and thus affirmed summary judgment on that claim.

As to plaintiff's claim of unlawful wiretapping, it is well-established that in opposing a motion for summary judgment, a party "may *not* rest upon the mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (emphasis added). The nonmoving party must produce proof in support of its assertion that there are genuine issues of material fact for trial. Thompson has failed to make this showing with respect to his unlawful wiretapping claims against Phil and Elsie Dulaney.

9. Thompson also vigorously argued in his brief that if the communication is intercepted for the purpose of "committing any other injurious act," then consent is unavailable. What he failed to recognize is that while this used to be a valid criterion for limiting the applicability of the consent defense, Congress amended the statute in 1986, as part of the same amendments changing the *mens rea* requirement from "willful" to "in-

tentional." The 1986 amendments specifically eliminated the "injurious act" limitation on the consent exception and it is therefore no longer a relevant concern.

10. Thompson asserted that Denise Dulaney's conduct also amounted to an invasion of privacy tort. This Court is unable to find any statutes that make Denise Dulaney's conduct tortious.

The only possible allegation to support these claims is Thompson's claim that on February 11, 1989, Denise Dulaney admitted to him that her parents were involved in taping the conversations. Thompson has, however, failed to provide any affirmative evidence other than his own conclusory statements in support of this contention. Moreover, at his deposition, he admitted that all he knew about Mr. and Mrs. Dulaney was that the tapings occurred in their house with their equipment, and that they hired experts and attorneys for Denise Dulaney. He admits that this is the full extent of his knowledge regarding the involvement of Phil and Elsie Dulaney. As a result, this Court concludes that he has failed to meet his burden of demonstrating that there are any factual issues for trial, and summary judgment will therefore be entered for Mr. and Mrs. Dulaney on Thompson's unlawful wiretapping claim.

### 2. The Conspiracy Claim

 The Tenth Circuit concluded that there was a question of fact as to whether Denise Dulaney and one of her expert witnesses, Dr. Russ Sardo, engaged in a conspiracy to violate Title III. Thompson alleges that Dr. Sardo specifically requested that Denise Dulaney gather wiretapped evidence for his use at the custody hearing. He also alleges that Dr. Sardo admitted that Denise taped and transcribed the conversations for him, and that he reviewed them and discussed them with other defendants.

Dr. Sardo vigorously contests these allegations. He denies that he conspired with Denise Dulaney to tape the conversations at issue; he denies any participation in any form relative to the taping of these conversations; he further denies that the tapes, which he admits he reviewed, were created in violation of the law; and finally, he denies that he disclosed the contents to anyone other than when he testified in court.

The Court concludes that there are conflicting factual allegations here as to Dr. Sardo's involvement in, and knowledge of, the tape recordings at issue here. As a result, summary judgment on the conspiracy claim must be denied.

### 3. The Use or Disclosure Claims

#### a. In General

 As discussed above at length, in order to set forth a *prima facie* claim for use and disclosure liability under Title III, a defendant must know that the information used or disclosed was the result of an illegal wiretap. Proof of knowledge that the information came from a wiretap is, without more, insufficient to make out a *prima facie* claim. The Tenth Circuit clearly stated that unless circumstantial evidence is introduced which would allow an inference that the defendant knew or should have known that the wiretap was illegal under Title III, which will often require the plaintiff to prove that no consent was ever given, then summary judgment is appropriate. The Court will now apply these principles to the particular circumstances of each defendant.

#### b. Application to this Case

##### i. Denise Dulaney

 Denise Dulaney has not contested the issue of whether the information obtained came from a wiretap. She has also not challenged Thompson's claim that she did in fact disclose this information to her attorneys, Moody and Kobelin, as well as her expert witnesses, Drs. Sardo and Brounstein. She has, however, asserted that consent is a valid defense. Thus, there is a factual issue of whether she, acting on behalf of the minor children, *knew* that the wiretap itself was illegal. Therefore, summary judgment is unwarranted on this claim.

##### ii. Phil and Elsie Dulaney

 In Thompson's opposition to summary judgment, he makes the conclusory statement that Phil and Elsie Dulaney "disclosed to other Defendants and others the contents of the intercepted communications." Thompson's affidavit opposing summary judgment does not, however, contain any factual allegations as to Phil and Elsie Dulaney and his claim of unlawful disclosure. It bears repeating that a party "may *not* rest upon the mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510

(emphasis added). The nonmoving party must produce proof in support of its assertion that there are genuine issues of material fact for trial. While Thompson is not resting on his pleadings *per se,* a conclusory assertion in his affidavit that Phil and Elsie Dulaney disclosed this information, does not provide this Court with any additional guidance as to what, if any, material disputes of fact exist. In their motion for summary judgment, the Dulaneys argue precisely this point: that Thompson has failed to identify the factual basis for these claims.[11] This Court agrees, and concludes that Phil and Elsie Dulaney are entitled to judgment as a matter of law on Thompson's disclosure claims.

### iii. *Drs. Dale Brounstein and Russ Sardo*

■ Dr. Brounstein sets forth three arguments in support of his motion for summary judgment on Thompson's use or disclosure claims. First, he argues that he never "used" the communications as the term is employed in the statute. Second, he argues that he had no knowledge that the information came from a wiretap. Third, he argues that he certainly had no knowledge of the facts and circumstances surrounding the interception of the communication that would enable an inference to be drawn that he knew the wiretap was illegal. He does not, however, dispute the fact that he did read the transcripts.

Likewise, Dr. Sardo argues that he did not know that the information that he read came from a wiretap, and further, that he had no knowledge of any facts that would enable an inference to be drawn that he knew that the wiretap was illegal.

11. The probable reason that he has failed to allege any facts in support of this contention was revealed during his deposition, where Thompson stated that he was relying on hearsay and speculation in support of this claim, and has no first-hand knowledge.

12. In Dr. Sardo's affidavit, he clearly states "I listened to the tape" that Denise Dulaney brought him. In Dr. Brounstein's affidavit, he states that "I listened to a tape of one conversation between Thompson and his children."

In his opposition, Thompson argues that both Brounstein and Sardo used the contents of these wiretapped conversations in formulating their expert opinions, and that they also discussed these conversations with Denise Dulaney and other defendants, presumably Kobelin and Moody.

■ As to Dr. Brounstein's first contention in regards to the "use" requirement, the Court is not persuaded by the innovative argument that the term "use," as utilized in the statute, is an active, rather than a passive term, and therefore, Congress did not intend for reading or listening to constitute "use." This Court thinks that it strains logic to conclude that reading a document or listening to a tape does not amount to "use" of those items.

As to remaining elements regarding knowledge that the information came from an illegal wiretap, neither of these defendants denies the fact that they did in fact listen to the recordings and/or read the transcripts of these conversations.[12] In supplemental pleadings filed by counsel for Dr. Brounstein, he argues that at the custody hearing, Brounstein did not rely on the recorded conversations in formulating his opinion that Thompson was an unfit parent.

The Court is somewhat perplexed by this argument since it is essentially contending that there was no "disclosure" of the contents of these communications, while nonetheless admitting "use." This does not help the defendant's position. Use or disclosure liability is disjunctive; liability attaches for one or the other, and while proof of both use and disclosure is sufficient, it is certainly not necessary. *See* 28 U.S.C. § 2511(1)(b)–(d) (1988).[13]

13. In other words, "use," as the term is used in the statute, does not require the defendant to "rely" on the information at a later date. "Use" means exactly what it says: to use. The statute does not limit use to certain types of use, or require actual reliance. Thus, by acknowledging that he did in fact listen to a recording, Brounstein has basically conceded the first element necessary to establish liability. Of course, the plaintiff will still have to prove the more difficult elements which are that the defendant knew that the information came from a wiretap that was illegally established.

As to the elements regarding knowledge that the material came from an illegal wiretap, the Court concludes that there are questions of fact regarding these elements. Thompson submitted evidence, discussed above, which alleges that Sardo specifically requested that Denise Dulaney gather wiretapped evidence for his personal use. As to defendant Brounstein, Thompson submitted evidence that would support an inference that Brounstein knew, or at least should have known, that the information came from a wiretap. Therefore, the Court concludes that summary judgment is inappropriate on these claims.

### iv. *Jerry Kobelin and Robert Moody*

 Kobelin and Moody were Denise Dulaney's attorneys at the custody hearing and were involved in the divorce proceedings as well. Once again, for reasons that are similar to those set forth above with respect to Drs. Sardo and Brounstein, the Court concludes that there are genuine issues of fact over the knowledge elements of the use or disclosure claims of Thompson. The affidavits of these defendants and Thompson are in conflict. It appears undisputed that these defendants did use or disclose these conversations during the course of their representation of Denise Dulaney. Whether they knew that the material came from an unlawful wiretap, however, is a question of fact which this Court may not decide. Therefore, summary judgment is unwarranted on these use or disclosure claims as well.

**THEREFORE,** it is,

**ORDERED** that Defendant Denise Dulaney's Motion for Summary Judgment on the illegal wiretapping claim be, and the same hereby is, **DENIED.** It is further

**ORDERED** that Defendants Phil and Elsie Dulaney's Motion for Summary Judgment on the illegal wiretapping claim be, and the same hereby are, **GRANTED.** It is further

**ORDERED** that Defendants Phil and Elsie Dulaney's Motion for Summary Judgment on the use or disclosure claims be, and the same hereby are, **GRANTED.** It is further

**ORDERED** that Defendant Dale Brounstein's Motion for Summary Judgment on the

use or disclosure claim be, and the same hereby is, **DENIED.** It is further

**ORDERED** that Defendant Russ Sardo's Motion for Summary Judgment on the use or disclosure claim be, and the same hereby is, **DENIED.** It is further

**ORDERED** that Defendant Russ Sardo's Motion for Summary Judgment on the conspiracy claim with Denise Dulaney be, and the same hereby is, **DENIED.** It is further

**ORDERED** that Defendant Robert Moody's Motion for Summary Judgment on the use or disclosure claim be, and the same hereby is, **DENIED.** It is further

**ORDERED** that Defendant Jerry Kobelin's Motion for Summary Judgment on the use or disclosure claim be, and the same hereby is, **DENIED.**

United States District Court, D. Wyoming.