**Jonathon Todd LEACH, Plaintiff,**

v.

**Craig M. BYRAM and Alderson, Ondov, Leonard, Sween Rizzi, Defendants.**

No. Civ.97–2686(DSD/JMM).

United States District Court, D. Minnesota.

May 24, 1999.

Charles Kane Frundt, Frundt Frundt Johnson & Roverud, Blue Earth, MN, for Jonathon Todd Leach, plaintiff.

John M. Degnan, Christopher R. Morris, Bassford Lockhart Truesdell & Briggs, Mpls, MN, for defendants.

## ORDER

DOTY, District Judge.

This case came on for hearing on April 26, 1999 before the court sitting without a jury. The court heard testimony, received exhibits, written final summations and proposed orders. Based on the material received, the file and the proceedings, the court issues the following findings of fact, conclusions of law and order for judgment.

## INTRODUCTION

This action was commenced on December 4, 1997, alleging that plaintiff had been injured by the interception of a specific conversation on a portable phone and by the use of that interception by defendants. Liability is based on that part of the criminal code which makes it illegal to intercept or use such transmissions under most circumstances, 18 U.S.C. § 2511(1)(a), (d), and provides a private right of action for enforcement, 18 U.S.C. § 2520.

The court holds that defendant Byram did intentionally use material from an illegal interception, a technical violation of the statute. However, because of the nature of the violation and plaintiff's failure to prove damages or other conduct justifying relief, plaintiff shall recover no damages but shall be reimbursed for his reasonable attorney's fees and costs.

## FINDINGS OF FACT

### 1. Basis for Liability

On December 14, 1995 defendant Craig Byram, an associate at the Alderson, et al. law firm, sent a letter to Evan Larson, an attorney then representing Todd Leach, the plaintiff. (PX 3) Todd Leach, his wife and his brother had been sued by Todd's father, Jack Leach, in a matter involving the dissolution of a business partnership.

Byram and the Alderson firm represented Jack Leach in the suit. The litigation was contentious, as only intra-family matters can be. In his four-page letter, Byram discussed several matters, but of relevance here is a paragraph relating to tapes Jack Leach had recorded when intercepting phone calls made by Todd Leach on a portable phone. Byram wrote:

> That brings me to the tapes we discussed recently on the phone. I have now had an opportunity to review them, although transcripts have not been made. As I indicated on the phone, I would provide you with copies of the tapes if you would like them. You indicated that you did not care to have copies of the tapes and did not care to know about their contents. Suffice it to say, there is a significant amount of admissions and impeachment material on the tapes regarding misuse or misapplication of partnership assets or funds, the break-in at the Albert Lea office, insurance fraud, the seed in Todd's mother's garage, sod installation which was not accounted for, and illegal activity in Mason City involving Todd and Dan. This is just a short list of the things contained on the tapes. It will be interesting to see how your client's and witness' credibility stand up after discussing some of these past statements.

In the last paragraph of the letter Byram set forth some elements that might help settle the litigation, and made a strong statement supporting settlement on behalf of his client.

The tapes had been made by Jack Leach using a small recording device and a police scanner tuned to the frequency of Todd's portable phone. The evidence shows that Jack had discovered the ability to intercept his son's portable phone inadvertently, and had gotten advice from a friend on how to use the scanner and recorder. It is clear from the evidence that Jack reported to his attorneys facts that he had learned through his eavesdropping without revealing the true source of his information.

Eventually, his attorneys learned that Jack was intercepting and recording the phone conversations. In response, two partners at the Alderson firm, Steve Rizzi and Gary Leonard, instructed him to stop doing it. There is no credible evidence to support a claim that Jack Leach's attorneys had anything to do with the interception or recording of Todd's phone calls.

As the time for trial approached, Jack Leach delivered certain of the tapes to attorney Byram and instructed him to use them as evidence. Concerned about his client's instruction and uncertain whether the tapes could be properly introduced at trial, Byram asked another associate to prepare a legal memorandum on the subject. In his memorandum, the associate concluded that it might be acceptable to introduce testimony based on intercepted information. Byram decided that if the information or the tapes were going to be used as the client instructed, he must disclose them to opposing counsel. Thus he orally informed Larson of the tapes, and confirmed their existence by the letter quoted above dated December 14, 1995.

The attorney-client relationship between Jack Leach and the Alderson firm was not ideal. Steve Rizzi, the partner in charge of the file, had entered into a shouting match with Jack after a pre-trial conference which had not gone well. Rizzi had criticized Jack for shifting his positions often and erratically because, as he testified, Jack was relying on his eavesdropping, and Rizzi had instructed him not to. In addition, Jack did not pay his legal bills as evidenced by a letter dated November 27, 1995. (PX 1) Jack retained new counsel, and the law suit between him and his children was eventually settled. (DX 1) The admissibility of the tapes was no longer the issue, but the question of who should pay for Todd's alleged invasion of privacy became the focus during settlement negotiations.

**2. The Release**

In the settlement agreement (DX 1) Todd and Nancy Leach agreed to not proceed against Todd's father for the illegal interception and recording of their portable phone conversations. They also agreed to hold him harmless from any claims of any third party, specifically retaining the right to proceed against any third party. They also released Jack Leach with the following language:

> Subject to the foregoing, and subject to the full compliance therewith by each of the parties, Jack Leach, Todd Leach and Nancy Leach do in all respects, manners, and things, release and fully discharge each other from any liability, claim, or obligation of any kind of character, whether arising out of the partnership relation in Leach Sod Farms or their relationship with respect to the businesses of Leach Sod & Nursery of Albert Lea and Leach Sod & Nursery of Mason City, and the foregoing shall be deemed to constitute a full, final, and complete settlement between said parties and of all other claims of any kind or character which otherwise might exist between the parties arising out of their prior business relationships and neither party shall hereafter come upon the premises owned by the other without first obtaining permission to enter thereon.

## CONCLUSIONS OF LAW

**1. Liability**

██ This case arises from a complaint filed December 4, 1997, alleging that a particular tape recording had been made of a telephone conversation between Todd Leach and his attorney at the time, Evan Larson, relating to the defense of a complaint involving Todd and others brought by his father, Jack Leach. Because this action is in the form of an enforcement action of a criminal statute, the court limited the evidence to the complained of activities.

The criminal statute that provides the basis for liability in this matter is found at 18 U.S.C. §§ 2510 through 2522, commonly

called the Wiretapping Act. The specific provisions that apply are:

§ 2511. Interception and disclosure of wire, oral, or electronic communications prohibited

(1) Except as otherwise specifically provided in this chapter any person who-

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; [or]

. . .

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; . . .

. . .

shall be . . . subject to suit. . . .

§ 2520. Recovery of civil damages authorized

(a) In general.—Except as provided in section 2511(2)(a)(ii), any person whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

(b) Relief.—In an action under this section, appropriate relief includes—

(1) such preliminary and other equitable or declaratory relief as may be appropriate;

(2) damages under subsection (c) and punitive damages. in appropriate cases; and

(3) a reasonable attorney's fee and other litigation costs reasonably incurred.

(c) Computation of damages.—

. . .

(2) In any other action under this section, the court may assess as damages whichever is the greater of—

(A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

(B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

Defendants did nothing in violation of § 2511(1)(a) relating to the interception of any communication. However, it is clear that defendant Byram intentionally used the contents of an intercepted communication provided to him by his client, Jack Leach, in violation of § 2511(1)(d). The letter from Byram to Larson dated December 14, 1995 contained a veiled threat to use the information for impeachment at trial, and that suffices as a "use" under the statute. *Cf. Reynolds v. Spears*, 93 F.3d 428 (8th Cir.1996); *Thompson v. Dulaney*, 838 F.Supp. 1535 (D.Utah 1993).

Defendants argue that the use was not intentional and that Byram did not know that the information came from a prohibited interception. The testimony of witnesses for both plaintiff and defendants substantiates the fact that Byram knew of the illegal activities of his client before he sent the December 14, 1995 letter, and that he deliberately used that knowledge to aid him in attempting to procure a settlement. The letter is evidence of Byram's knowledge, and it is clear that Byram sent the letter "purposely, and not accidentally." Black's Law Dictionary 810 (6th ed.1990) (defining "intentionally"). Therefore, the court holds that Craig Byram engaged in a violation of § 2511(1)(d).

**2. Damages**

■ Section 2520 of the Act allows the recovery of civil damages, as well as other relief, and allows the recovery of attorneys fees reasonably incurred in pursuing an action against a person violating the Act. The scheme of calculating damages set forth at § 2520 includes the award of actual damages and statutory damages. Plaintiff offered no proof of actual damages, and in his complaint requests only statutory

and punitive damages. Therefore no actual damages can be awarded.

The Eighth Circuit Court of Appeals has had an opportunity to interpret the damages scheme set forth in § 2520, and has held that the award of statutory damages is discretionary with the district court. *See Reynolds,* 93 F.3d at 433. The court declines to order statutory damages in this case.

Although Craig Byram technically violated the statute, the evidence is clear that it was his client, and plaintiff's father, who intercepted the portable telephone conversation initially and monitored and recorded further conversations. Jack Leach's liability for his actions has been settled, excused and indemnified by the plaintiff. Plaintiff now wants to continue this litigation, even though he testified that he wanted all the litigation involving his father behind him, by attempting to collect from his father's attorneys for acts that were initiated and carried out by his father. It would be unjust to require Byram to pay damages, statutory or otherwise, to plaintiff merely because he (1) incorrectly believed that he had an obligation to his client to consider the use of the illegally obtained tape and (2) correctly believed that he should disclose the tapes to opposing counsel. In addition, Byram and his firm researched the issue of whether it would be permissible to introduce evidence from the taped conversations, and concluded that it would be permissible under the right circumstances. While this conclusion may have been wrong, the fact that they did the research shows that they were not moving forward recklessly.

### 3. Punitive damages

██ Plaintiff requested punitive damages in his complaint. Section 2520 authorizes punitive damages "in appropriate cases." The court concludes that it would be inappropriate to award punitive damages in this matter.

First, there was no evidence introduced to show that defendants acted recklessly, maliciously or in any other way that would support or justify an award of punitive damages against them. *See Bess v. Bess,* 929 F.2d 1332, 1335 (8th Cir.1991) ("To merit punitive damages under § 2520, [plaintiff] must prove a wanton, reckless or malicious violation."). Second, the evidence demonstrates that both the firm and Byram acted appropriately and ethically in handling a challenging and difficult situation. The firm and Byram were concerned with the conduct of their client, and attempted to have him cease it. They also researched the issue, and proceeded carefully with the evidence thrust upon them by their client. In sum, the policy reasons that would support an award of punitive damages are not present in this case.

### 4. Release

The court holds that release does not affect the legal liability of defendants.

### ORDER FOR JUDGMENT

Plaintiff shall not recover actual damages, statutory damages or punitive damages. Plaintiff shall, however, recover a reasonable attorney's fee, costs and disbursements.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**