# United States Court of Appeals
## For the First Circuit

No. 19-1424

IN RE: HIPAA SUBPOENA (PATIENT SERVICES, INC.)

J. ARTHUR WOOD; KAREN MIDDLEBROOKS;
MICHAEL HERBERT; AMY OLLETT,

Petitioners, Appellants,

v.

UNITED STATES,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Torruella, Boudin, and Kayatta,
Circuit Judges.

Frank A. Libby, Jr., with whom Brian J. Sullivan and
LibbyHoopes, P.C. were on joint brief, for appellant Wood.
Bruce A. Singal, with whom Lauren E. Dwyer and Barrett &
Singal, PC were on joint brief, for appellants Middlebrooks,
Herbert, and Ollett.
Gregg Shapiro, Assistant United States Attorney, with whom
Andrew E. Lelling, United States Attorney, and Abraham R. George,
Assistant United States Attorney, were on brief, for appellee.

June 5, 2020

**TORRUELLA**, **Circuit Judge**.    Intervenors-Appellants J. Arthur Wood, Karen Middlebrooks ("Middlebrooks"), Michael Herbert, and Amy Ollett (collectively "Appellants") appeal the district court's order reversing a magistrate judge's quashing of an administrative subpoena duces tecum.    The magistrate judge found that Patient Services, Inc. ("PSI"), Appellants' employer, began recording telephone conversations from Middlebrooks's extension during the course of her employment as a Program Manager in PSI's call center, which was located on the second floor (where calls were regularly recorded), and intentionally continued recording Middlebrooks's calls after her promotion and subsequent transfer to the third floor (where calls were not regularly recorded), in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522 ("Title III"). The Government timely objected to the magistrate judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(A), arguing that the magistrate judge's finding that the recordings violated Title III "was clearly erroneous because proof of a Title III violation requires evidence of intent," and Appellants had presented no evidence that PSI intended to continue intercepting and recording telephone conversations from Middlebrooks's extension after she relocated to the third floor.    The district court sustained the Government's objection, finding that the magistrate's opinion was contrary to

law because he had inappropriately shifted the burden of proof to the Government. The district court held that Appellants bore the burden of proving that PSI's interception of calls from Middlebrooks's extension after her move to the third floor was intentional, and that they failed to meet their burden. Accordingly, the court reversed the magistrate's order that had quashed the subpoena. Appellants timely appealed. After careful consideration, we affirm.

## I. BACKGROUND

**A. Factual Background**[1]

PSI is a non-profit organization operating in Midlothian, Virginia. It provides financial assistance to patients suffering from life-threatening diseases who are not otherwise fully covered by their insurance plans. PSI employs Patient Service Representatives, who handle over-the-phone inquiries from patients about financial assistance applications. PSI also employs Assistant Program Managers, who manage the Patient Service Representatives, as well as Program Managers, who supervise both Assistant Program Managers and Patient Service Representatives.

---

[1] Readers of this opinion should be careful to note that (aside from the allegation that PSI improperly recorded phone calls) the record contains no charge, and certainly no finding by any court, that any person or company named in this opinion has engaged in any misconduct at all.

-4-

Patient Service Representatives, Assistant Program Managers, and Program Managers work in the call center, which is located on the second floor of PSI's three-story building; the third floor is reserved mostly for executive-level employees.

In or about May 2011, PSI purchased a new telephone system from NEC Corporation that allowed PSI to record telephone calls made to and from certain extensions. Cottrell Communications Corporation ("Cottrell") installed the system. PSI purchased recording licenses for each telephone extension from which it wished to record conversations. The recording licenses, which were manually assigned to specific extensions, operated through a "Record and Evaluate" software system. The system only recorded calls from the telephones connected to extensions with an assigned recording license. Each employee had a telephone extension assigned, which originated from the telephone jack located in the employee's office, rather than from the telephone itself. Thus, the recording licenses followed the employees' extensions rather than the telephones.

In order to record calls from a specific extension, someone at PSI needed to log into its "Record and Evaluate" system, open the screens that listed the purchased licenses, and then drag and drop the purchased recording license to a specific extension. Once this process was completed, the recording system would

automatically record all calls made to and from the newly licensed extensions and store the recordings in the "Record and Evaluate" system server. NEC designed these recording licenses to continuously operate until the license was manually disabled through the same "Record and Evaluate" system that was used to assign them in the first place.

Few PSI employees were involved in installing the new telephone system. James Grifasi ("Grifasi"), a Network Engineer at PSI, and his assistant, Chip Saunders ("Saunders"), worked with Cottrell contractors to install the new system. Grifasi was the only person authorized to order the extensions rewired, and Grifasi, Saunders, and two Cottrell contractors were the only individuals authorized to physically rewire the extensions. Furthermore, Grifasi and Saunders were the only two PSI employees with the administrator privileges required to access the recorded conversations. Both Grifasi and Saunders could access the "Record and Evaluate" system and see which extensions had been assigned recording licenses. The recording system was installed with the intent of only recording the calls of the Patient Service Representatives, Assistant Program Managers, and Program Managers working in PSI's second-floor call center, as well as those of a select group of employees working on the other floors. Generally, the system was not intended to record calls made by the executives

-6-

and other employees who worked on the third floor. Most administrative staff were also exempted from being recorded.

PSI hired Middlebrooks as a Patient Service Representative in 2004, and then promoted her to a Program Manager position within the call center in 2006. At some point in 2011, PSI assigned Middlebrooks the extension 1306, which had a recording license. According to the established protocol, the "Record and Evaluate" system recorded Middlebrooks's calls from that line. In late 2011 or early 2012, PSI promoted Middlebrooks to the position of Manager of Program Development and moved her to an office on the third floor, where calls are typically not recorded. Generally, when PSI moved an employee to a new office, the employee would be assigned the extension number connected to the phone jack in the new office. However, Middlebrooks and at least one other employee retained their extensions when they were relocated to new offices on different floors.[2]

PSI had to take several steps to move an employee's extension from one office to another. The wires from each phone jack led to a central panel, called a "110 punch/wiring block." To move an extension, the wires connecting a particular phone jack to the central panel needed to be removed and then re-installed to

---

[2] The other employee moved from the second floor to the first floor.

a new line on the punch panel.  This rewiring process did not affect the recording license assigned to an extension.  Instead, the recording license remained in place even if the extension itself was moved from one office to another.  In order to stop recording a particular extension, Grifasi or Saunders needed to log into the "Record and Evaluate" system and manually remove the license from that extension.  When Middlebrooks was promoted and relocated to the third floor, PSI successfully transferred her extension to her new office on the third floor, but no one at PSI manually terminated the recording license that had been assigned to her extension on the second floor.  Thus, the system continued recording calls that were placed from and received by her extension.  PSI recorded several telephone conversations between Middlebrooks and the other appellants in this case after Middlebrooks moved to the third floor.

## B. Procedural Background

In July 2016, when investigating whether PSI had engaged in an illegal kickback scheme involving pharmaceutical manufacturers and Medicare beneficiaries, pursuant to 18 U.S.C. § 3486, the Government issued an administrative subpoena duces tecum to PSI for "[a]ll recorded conversations of PSI officers and employees."  This appeal concerns only those conversations that were recorded on Middlebrooks's extension after she was promoted

-8-

and moved to the third floor.[3] PSI contends that it first learned about the recordings in question after it was served with the subpoena. Only when PSI commenced its efforts to comply with the subpoena did Appellants learn that their conversations with Middlebrooks had been recorded without their knowledge or consent. Consequently, Appellants moved as intervenors to quash the subpoena, alleging that PSI's recording of their telephone conversations should not be produced because they were obtained in violation of Title III. In October 2017, the district court referred the case to Magistrate Judge Donald L. Cabell.

After a motion hearing, on August 15, 2018, the magistrate judge issued an order granting Appellants' motion to quash. In re HIPAA Subpoena, No. 17-mc-91097 (D. Mass. Aug. 15, 2018). The magistrate judge noted that PSI had intentionally intercepted and recorded calls from Middlebrooks's extension while she worked in PSI's call center on the second floor. Id. at 4, 8. Then, after she was promoted, PSI intended to transfer her extension to her new office on the third floor. Id. at 5. The magistrate further noted that PSI knew that it needed to take a series of steps to successfully transfer her extension to the third

---

[3] The parties do not dispute that PSI could record Middlebrooks's calls when she worked as a Program Manager in PSI's second-floor call center.

floor, and that it needed to manually remove the recording license from the system in order to stop recording calls on Middlebrooks's extension. Id. at 5-6. Yet, PSI took all the steps necessary to transfer Middlebrooks's extension to the third floor but failed to manually remove the recording license. Id. at 6. The magistrate noted that "the evidence before the [c]ourt [did] not plainly explain why PSI failed to terminate the recording license when rewiring Middlebrooks'[s] extension," but he refused to find that this omission was the product of inadvertence or mistake because PSI had "remain[ed] silent" about why it failed to remove the recording license and, in any event, PSI "should have known when it rewired [Middlebrooks's] extension that her calls would continue to be recorded unless it acted to stop the practice." Id. at 9-11. Based on these findings, the magistrate judge concluded that PSI had continued to intentionally record calls on Middlebrooks's extension even after her relocation to the third floor, in violation of Title III, which merited the quashing of the subpoena. Id. at 11-12.

The Government objected to the magistrate judge's order pursuant to 28 U.S.C. § 636(b)(1)(A). It argued that the magistrate judge's finding that the recordings violated Title III "was clearly erroneous because proof of a Title III violation requires evidence of intent, and there [was] no such evidence here." The Government

-10-

noted that Appellants bore the burden of proving intent, yet they had presented no evidence that PSI intended to continue intercepting and recording telephone conversations from Middlebrooks's extension after her relocation to the third floor. According to the Government, the evidence showed, at most, that PSI "made a mistake when it failed to stop recording Ms. Middlebrooks's line," which "may have been the product of negligence or gross negligence," but that was not enough to support a finding of intent.

On April 4, 2019, the district court sustained the Government's objection to the magistrate judge's order and reversed the magistrate's quashing of the subpoena. In re HIPAA Subpoena, No. 17-91097, slip op. at 12 (D. Mass. April 4, 2019). The district court found that the magistrate's opinion was contrary to law because he had inverted the burden of proof by requiring the Government to prove that PSI had continued to record Middlebrooks's extension by inadvertence or mistake. Id. at 10. The district judge agreed that PSI meant to record Middlebrooks's telephone calls while she was on the second floor and should have been aware of the consequences of rewiring her extension to the third floor without simultaneously cancelling the recording license. Id. at 11. Nonetheless, it concluded that the magistrate judge relied on the absence of evidence explaining why PSI failed

-11-

to stop recording telephone conversations from Middlebrooks's extension instead of requiring Appellants to prove that it was PSI's conscious objective to continue to record Middlebrooks's conversations after her promotion. Id. at 11-12. Accordingly, the court reversed the magistrate's order that had quashed the subpoena. Id. at 12. Appellants timely appealed.

## II. DISCUSSION

### A. Standard of Review

A district court may reconsider an order on a pretrial matter designated to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) if the magistrate judge's order is "clearly erroneous or contrary to law." Like the district court, this Court reviews the magistrate judge's factual findings for clear error. Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 4 (1st Cir. 1999) (noting that, "[l]ike the district court, we review [the magistrate judge's] factual findings under the 'clearly erroneous' rubric" (citing 28 U.S.C. § 636(b)(1)(A))). This means that we accept the magistrate judge's findings of fact and the conclusions drawn therefrom unless, after analyzing the entire record, we "form a strong, unyielding belief that a mistake has been made." Id. (quoting Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990)). We review de novo whether an order is contrary to law. See PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15

-12-

(1st Cir. 2010) ("[W]e, like the district court, must afford de novo review to . . . purely legal question[s].").

## B. Applicable Law

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522, also known as the Federal Wiretap Act,[4] was enacted to "(1) protect[] the privacy of wire and oral communications, and (2) delineat[e] on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized."  United States v. Cartagena, 593 F.3d 104, 108 n.1 (1st Cir. 2010) (quoting Gelbard v. United States, 408 U.S. 41, 48 (1972)).  It prohibits the intentional "interception[5] of telephone conversations, subject to certain exceptions [not applicable here], without a court order."[6]  United States v. Lewis, 406 F.3d 11, 14 (1st Cir.

---

[4]  See United States v. Larios, 593 F.3d 82, 84 (1st Cir. 2010).  Title III was amended by the Electronic Communications Privacy Act of 1986 ("ECPA").  Pub. L. No. 99-508, 100 Stat. 1848; see also Bartnicki v. Vopper, 532 U.S. 514, 524 (2001) (explaining some aspects in which the ECPA amended Title III and "enlarged [its] coverage").

[5]  "The statute defines 'intercept[ion]' as 'the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.'"  Larios, 593 F.3d at 90 (quoting 18 U.S.C. § 2510(4)).

[6]  One of the ways in which the ECPA amended Title III was by changing the state of mind requirement from "willful" to "intentional."  In re Pharmatrak, Inc., 329 F.3d 9, 23 (1st Cir. 2003) (explaining how the ECPA's legislative history makes

-13-

2005) (citing 18 U.S.C. §§ 2511, 2518); see also United States v.

Councilman, 418 F.3d 67, 72 (1st Cir. 2005) (en banc). Title III

further prohibits the subsequent use or disclosure of unlawfully

intercepted communications, as well as their use as evidence "in

any trial, hearing, or other proceeding in or before any court,

grand jury, department, officer, agency, regulatory body,

legislative committee, or other authority of the United States, a

State, or a political subdivision thereof." 18 U.S.C.

§§ 2511(1)(c), 2515.

"Intentional" as used in the context of Title III "means

more than that one voluntarily engaged in conduct or caused a

result." In re Pharmatrak, Inc., 329 F.3d 9, 23 (1st Cir. 2003)

(quoting S. Rep. No. 99-541, at 23 (1986), as reprinted in 1986

U.S.C.C.A.N. 3555, 3577). Instead, the "conduct or the causing

of the result must have been the person's conscious objective."

Id. (quoting S. Rep. No. 99-541, at 23). Thus "[a]n 'intentional'

state of mind means that one's state of mind is intentional as to

one's conduct or the result of one's conduct if such conduct or

result is one's conscious objective." Id. (quoting S. Rep. No.

99-541, at 23). Consequently, "[a]n act is not intentional if it

is the product of inadvertence or mistake." Id. (citing Sanders

---

pellucid Congress's desire to require that the unlawful
interception be "intentional").

v. Robert Bosch Corp., 38 F.3d 736, 742–43 (4th Cir. 1994) and United States v. Townsend, 987 F.2d 927, 930 (2d Cir. 1993)). The party seeking protection under § 2515 against the use or disclosure of the unlawfully intercepted communications bears the burden of proving that a particular communication was intercepted intentionally in violation of Title III. See id. at 19.

## C. Analysis

We are tasked with determining whether the magistrate judge clearly erred in finding that Appellants met their burden of proving that PSI's interception of Middlebrooks's extension after her relocation to the third floor was intentional. According to Appellants, the magistrate judge's finding of intent was supported by the evidence on the record and the inferences drawn therefrom, and thus was not clearly erroneous and should not have been disturbed by the district court. We disagree.

To support his finding that PSI intended to continue intercepting Middlebrooks's extension, the magistrate judge, in essence, relied on the following facts: PSI started recording Middlebrooks's extension intentionally while she worked in the call center located on the second floor; PSI knew that it needed to affirmatively remove the recording license if it no longer wished to continue recording calls from that extension when it was rewired to the third floor; and PSI failed to take affirmative

steps to remove the license during the rewiring process.  Based on this evidence, the magistrate judge inferred that PSI intended to continue recording calls on Middlebrooks's extension after her promotion and relocation to the third floor because PSI "should have known" that the recording would continue after the rewiring unless it took affirmative steps to end the recordings.

The facts in the record, however, do not permit the inference drawn by the magistrate judge that PSI intended to continue the recordings after Middlebrooks was promoted and relocated to a floor where telephone conversations were usually not recorded.

Although a reviewing court may not "reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently," Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985), the deference owed to the inferences made by a trier of fact is not limitless.  In order for the fact-finder's inferences to stand, they must be reasonable and drawn from the evidence in the record.  See United States v. Espinoza, 490 F.3d 41, 46 (1st Cir. 2007).

Here, the inference of intent drawn by the magistrate judge was not supported by the record.  Although the magistrate might have been right that PSI "should have known when it rewired [Middlebrooks's] extension that her calls would continue to be

-16-

recorded unless it acted to stop the practice," that PSI "should have known" that the recordings would continue is not sufficient to adequately establish the intent necessary to find a Title III violation.  See, e.g., United Sates v. Ford, 821 F.3d 63, 73 (1st Cir. 2016) (holding that enabling a jury to find mens rea on a "should have known" basis would enable it to improperly "convict one who was merely negligent in failing to know").  Perhaps PSI acted negligently or even with gross negligence in failing to remove the recording license, but neither negligence nor gross negligence satisfies the intent element required to find a Title III violation.  See In re Pharmatrak, Inc. Privacy Litig., 292 F. Supp. 2d 263, 267-68 (D. Mass. 2003) (noting that a theory of negligence or gross negligence "is [not] sufficient to satisfy the specific intent requirement under the EPCA").

Furthermore, the magistrate judge's finding of intent was based in part on PSI's failure to proffer evidence excusing its omission to remove the recording license on Middlebrooks's extension after her promotion and relocation to the third floor. See In re HIPAA Subpoena, No. 17-mc-91097, slip op. at 9-11 (noting that PSI opted to "remain silent" about its omission).  Yet, PSI did not have to prove mistake or inadvertence on its part because it did not bear the burden of proof.  It was Appellants who needed to prove that PSI intentionally continued recording Middlebrooks's

calls after she moved offices.[7]  See In re Pharmatrak, Inc., 329 F.3d at 19.

Because of what PSI "should have known" and its decision to "remain silent," the magistrate chose "between competing hunches," and sided with Appellants' theory.  The magistrate judge clearly erred in so doing, as neither what PSI should have known nor its failure to prove mistake or inadvertence were adequate grounds to find intent on a mere "hunch."[8]  Furthermore, the record, read as a whole, undermines any inference supporting a finding that PSI intentionally recorded calls on Middlebrooks's extension once she became Manager of Program Development.

It is undisputed that PSI bought the recording licenses with the intent to record calls made to and from the extensions assigned to certain positions, such as Patient Service

---

[7] We note that although the magistrate judge acknowledged at the motion hearing that Appellants bore the burden of proof, he then made some inconsistent statements in his opinion and order. See, e.g., In re HIPAA Subpoena, No. 17-mc-91097, slip op. at 9-10 (explaining how "even accepting that there may be a basis to reason that inadvertence or mistake led to the interception of Middlebrooks'[s] calls, the evidence before the Court does not plainly explain why PSI failed to terminate the recording license when rewiring Middlebrooks'[s] extension").

[8] We note that any inference as drawn by the magistrate from PSI's silence is undercut by the fact that PSI, as the target of the investigation, likely had little if any incentive to say anything that would undercut the position of its employees in attempting to quash the subpoena.

Representatives, Patient Managers, and Assistant Patient Managers. The evidence in the record is that when PSI first assigned the recording license to Middlebrooks's extension, it did so because she held the position of Program Manager, and not because of some other ulterior motive. Middlebrooks was then transferred to the third floor of PSI's offices when she was promoted to the position of Manager of Program Development, and there is no evidence in the record indicating that PSI regularly recorded the calls of other employees in that position.

Appellants needed to prove not merely that PSI's actions or omissions caused the continuing recording of calls on Middlebrooks's extension, but rather that the continuing recording was the result of PSI's "conscious objective"; that is, that PSI did not remove the recording license because it had the intention to continue recording her extension.[9]  See In re Pharmatrak, Inc., 329 F.3d at 23 (holding that "intentional" for Title III purposes means that it was the result of "the person's conscious objective").  Nevertheless, Appellants have not set forth any evidence showing that PSI was even aware of the recordings'

---

[9]  We note that in a case like this an inference of intent is more difficult to draw from a failure to remove a line from a group of recorded phones than it might have been had the line been added to a group of recorded phones.

-19-

existence until after it was served with the subpoena.[10]  This lack of evidence undermines the magistrate's finding that PSI "intended" to continue recording Middlebrooks's calls after she was promoted.  See Tyger v. Precision Drilling Corp., No. 4:11-CV-01913, 2018 WL 1744681, at *2 (M.D. Pa. Apr. 11, 2018) (holding that plaintiffs failed to satisfy the "intent" element to a Title III violation where testimony indicated that an audio recording was the result of inadvertence because the defendant was never aware that his camcorder had an audio recording function until he was alerted to that fact by plaintiffs' counsel); see also Abraham v. Cty. of Greenville, 237 F.3d 386, 392 (4th Cir. 2001) (holding that intent to record the judges' calls could be inferred based on "ample circumstantial evidence" put forth by plaintiffs, including a confidential memorandum prepared by the county official who decided to install the recording system explaining that the plaintiff-judges' lines were being recorded).  Here, although perhaps PSI "should have known" that Middlebrooks's extension would continue to be recorded after she was transferred to the

---

[10]  Appellants argue that because Grifasi, one of the few employees at PSI authorized to access the "Record and Evaluate" system, could see which extensions had been assigned recording licenses in the system, he must have seen that Middlebrooks's extension was still being recorded.  Again, what Grifasi could have seen is not enough to support a finding that PSI intended to continue recording Middlebrooks's extension.

third floor unless it affirmatively removed the license assigned to said extension, Appellants have not proffered any proof indicating that PSI did, in fact, know that the recording continued. Nor is there any evidence in the record that PSI had a motive to continue recording Middlebrooks's extension after her promotion, from which it could be inferred that the continued recording was the result of PSI's "conscious objective." In re Pharmatrak, Inc., 329 F.3d at 23 (noting that, although there is "authority suggesting that liability for intentionally engaging in prohibited conduct does not turn on an assessment of the merit of a party's motive," motive is not "entirely irrelevant in assessing intent" because "[a]n interception may be more likely to be intentional when it serves a party's self-interest to engage in such conduct" (citations omitted)).

Based on the foregoing, we conclude that the magistrate judge clearly erred in finding that Appellants met their burden of proving that PSI's interception of Middlebrooks's extension after her relocation to the third floor was intentional. The record lacks evidence showing that PSI had the intent to continue recording Middlebrooks's extension after her promotion, or a motive to do so. Settling for one of the "competing hunches" because PSI "should have known" that the recording would continue or because the Government did not "plainly explain why PSI failed

-21-

to terminate the recording license when rewiring Middlebrooks'[s] extension" is not enough to support a finding that PSI had the conscious objective to continue intercepting Middlebrooks's calls after she was promoted and relocated to the third floor.

### III. CONCLUSION

In light of the foregoing, we affirm the district court's order reversing the magistrate judge's grant of Appellants' motion to quash the subpoena _duces tecum_ as to the recordings of Middlebrooks's extension after she was relocated to the third floor of PSI's offices.

**Affirmed.**